HENRY P. WALSH *vs.* BOSTON ELEVATED RAILWAY
COMPANY.

Suffolk.     December 15, 1905. — June 21, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence.     Elevated Railway.*

In an action against a corporation operating an elevated railway for an injury
from particles of metal thrown out in the operation of the railway falling into
the plaintiff's eye as he was passing under the elevated structure and looked
up when he heard the noise of a train overhead, there was evidence that at the
time of the accident a shower of such metal particles called "sparks" came
down, that showers of sparks descended from the elevated structure with great
frequency, that the sparks were or might be thrown out by reason of the
friction of the contact shoe upon the third rail which supplied the electricity
for moving the defendant's trains, that by the adoption of a different kind of
shoe the injurious "sparking" might be avoided, or that a shield could be
placed underneath the third rail to prevent the falling of the sparks into the
highway. *Held,* that the question of the due care of the plaintiff in looking
up as the train was passing overhead, the question whether the particles that
got into the plaintiff's eye came from the train, and the question whether the
defendant did all that reasonably could be required of it to prevent sparks
from falling and injuring persons using the street beneath, were for the jury
with proper instructions from the presiding judge. Following *Woodall* v. *Boston
Elevated Railway, ante,* 308.

TORT against the Boston Elevated Railway Company for an
injury on June 16, 1902, from several particles of metal thrown
out in the operation of the elevated railway of the defendant
falling into the plaintiff's eye as he was passing along a public
highway at City Square in that part of Boston called Charles-
town.     Writ dated July 11, 1902.

At the trial in the Superior Court before *Fox,* J. it appeared
that, as the plaintiff was passing along a public highway at
City Square in Charlestown under the defendant's elevated
structure, a train came along; that its noise caused the plaintiff

to look up; that a shower of sparks came down, and immediately something entered the plaintiff's eye; that afterwards, at the Carney Hospital, several particles were picked or cut out from his eye by a physician, which might have been metal, steel, quartz or anything hard; that the defendant's elevated system had been in operation since June 10, 1901; that showers of sparks descended with great frequency from the structure, falling to the ground or within a few feet of it; that the elevated railway was operated by means of a rail, called the "third rail," running parallel with the tracks on which the train ran and charged with electricity, which was used as a motive power by communicating the electricity to the trains by means of what are called "shoes," a shoe being a cast iron block attached to the cars composing the elevated trains, which slides along the top of the third rail, there being four shoes on each car, and each shoe being twelve or thirteen inches long and five inches wide; that the surface of the shoes when new would be a little rough; that when put in use they would be worn smooth, some shoes being worn a great deal more than others; and that there were worn places or gashes in the third rail.

An expert witness for the plaintiff testified that worn places or gashes in the third rail might be caused by the taking out or dislodging of particles owing to the contact of the shoes; that, if shoes were constructed with a somewhat rough cast iron surface resting on the rail and passing along with the motion of the cars, that would be a condition that would be likely to cause sparks or particles to be dislodged and thrown out; that sparks are caused by poor contact between the shoe and the rail; that the remedy for sparking would be to increase the amount of contact by the area or the number of points of contact on the third rail; and that a number of points of contact would enable the current to be transmitted to the motors of the car without injurious sparking; that another method that could be used to prevent the falling of sparks into the highway from the third rail would be by means of a shield placed underneath the third rail for its entire length or at points where passers by would be injured by the sparks falling; and that the sparking could have been prevented by the defendant at any time.

An expert called by the defendant contradicted many of the

statements made by the expert for the plaintiff, but testified that the use of a bowspring on the shoes possibly might have lessened the sparking; that it would take three or four days' use when a new shoe was put in use to wear the surface smooth; and that a shoe could have been "machined" or made smooth before being put into use.

The judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*J. J. Mansfield, (J. F. Creed* with him,) for the plaintiff.

*E. P. Saltonstall, (S. H. E. Freund* with him,) for the defendant.

*O. O. Partridge & H. M. Channing,* counsel for John S. Woodall,* plaintiff in the case reported *ante,* 308, submitted a brief by leave of court.

MORTON, J. This case is governed by *Woodall* v. *Boston Elevated Railway, ante,* 308. It cannot be said as matter of law that the plaintiff was not in the exercise of due care because he looked up as the train was passing overhead, or that there was no evidence which would warrant a jury in finding that the particles which got into his eye came from the train on the elevated railway. Whether the defendant did all that could reasonably be required of it to prevent sparks from falling and injuring pedestrians and others using the street beneath was a question, under proper instructions, for the jury. This and the other questions raised are considered in the case above referred to, and need not be further considered here.

*Exceptions sustained.*

---

* The case of Walsh was argued on December 15, 1905, before the case of Woodall. The case of Woodall was argued on January 16, 17, 1906, but was decided on June 20, 1906, one day before the case of Walsh was decided.